Perkins *v.* Town of Colebrook.

<hr>

AUGUSTUS M. PERKINS *vs.* TOWN OF COLEBROOK.

First Judicial District, Hartford, May Term, 1896. ANDREWS, C. J., TOR-
RANCE, FENN, BALDWIN and HAMERSLEY, Js.

It is sufficient if the report of a committee does in effect find the facts
which the remonstrance alleges were not found; and the refusal of the
trial court under these circumstances to recommit the report, furnishes
no ground of error to the remonstrant.

Matters relevant to the issue tried by the committee should be presented
to that tribunal; if set up as grounds of remonstrance they do not
entitle the remonstrant to a recommittal of the report for a further
hearing by the committee. If not relevant, the committee could not
properly consider them on further hearing.

Upon the hearing of an application for the layout of a private way the com-
mittee, upon evidence not objected to, found that the selectmen of the
defendant town had always been ready and willing to lay out a way
for the plaintiff; but did not find that they had ever laid out, or actu-
ally offered to lay out, such way. *Held* that neither the fact found, nor
the one not found, were material to the validity of the report, and
furnished no ground for a remonstrance to its acceptance.

In determining the private necessity and convenience of a way sought by the plaintiff to be laid out over land of *P*, to the extent of the injury to such land, in connection with the fact that a reasonably convenient way for the plaintiff could be laid out elsewhere over the same land, are elements that may properly be taken into account by the committee.

The principal object of the statutes relating to the layout of private ways, is to give the applicant a reasonably convenient way somewhere to and from his land, and when this is done the object of the statutes is accomplished.

The statutory method of procedure for laying out private ways is substantially the same as that for public highways, and if the committee find that the way described in the application is not of private convenience and necessity, they cannot lay out another and substantially different way, although they find that the applicant has no means of access to his land except by crossing at some point the land over which he seeks to have the specified way laid out.

Whether a private way over water can be laid out at all under the statutes, *quære*.

Whether the layout of a way for the sole use of an individual over the land of another, is within the constitutional power of the legislature, *quære*.

[Argued May 5th—decided June 25th, 1896.]

APPLICATION for the layout of a private way, brought to the Superior Court in Litchfield County and heard by a committee appointed by the court, *Prentice, J.;* subsequently the court, *Shumway, J.*, overruled the remonstrance of the petitioner to the acceptance of the committee's report denying the application, and rendered judgment for the respondent, and the petitioner appealed for alleged errors in the rulings of the court.　*No error.*

The case is sufficiently stated in the opinion.

*George P. McLean* and *Donald T. Warner*, for the appellant (petitioner).

A committee appointed by the court to lay out a necessary private way, must lay it out over the route described in the petition. *Slattery* v. *Winne*, 101 N. Y. 218; 19 Amer. & Eng. Ency. of Law, 119. Or such committee has the power to change or modify the layout designated in the petition, so that said layout will afford the applicant convenient and reasonable access to his land. General Statutes, §§ 2701, 2722. One of these two propositions must be correct, otherwise the statute conferring the right of necessary private way is a

mere nullity, a sham and a delusion. The first of these propositions offers more certainty and hence affords more satisfaction to the applicant, than can be looked for if the second proposition is held to be the true one. In construing this statute it should be remembered that it is remedial in its nature. The applicant knows exactly what his needs in the matter are, and his demand for relief should be complied with unless it be wholly unreasonable and unjust. The committee find that the land of the plaintiff is *wholly* surrounded by that of the defendant Phelps. It is a *physical impossibility*, therefore, for the plaintiff to gain access to his land except over the land of the defendant. In the face of this fact the committee reports, not that a private way is not necessary, but that the way selected by the applicant is not necessary. What is there about the proposed layout which makes it less reasonable, more onerous than any route which the committee might or could suggest? Nothing but the damage to the fish pond, which the committee never estimated, *for they report that they made. no estimate of the damage.* The report of the committee should have been referred back to them by the court to enable them to embody therein the *facts* tending to show why the proposed route was undesirable and unnecessary, and that it was error in the court in refusing to recommit. If the proposition we have just discussed is held to be unsound by this court, then the second proposition, namely, that "such committee has the power to change or modify the layout designated in the petition so that said layout will afford the applicant convenient and reasonable access to his land," must be true. To hold the contrary would repeal, judicially, the Act granting the right claimed in the case. If the committee cannot change or modify the route proposed in his original layout, he is forever excluded from the use and occupancy of his land. He only asks the right of access to it, for which he is obliged to pay and is willing to pay to the owner of the surrounding land all actual damage caused by the layout. There is no question as to the constitutionality of the Act. *Reynolds* v. *Reynolds*, 15 Conn. 92; *Edwards* v. *Stonington Cemetery*, 20

id. 475. The statute rests upon public policy and should receive a liberal construction. Endlich on the Interpretation of Statutes, §§ 27, 103, 295; Suth. on Stat. Cons. § 411; *Palmer* v. *Palmer*, 6 Conn. 414; *Wolcott* v. *Pond*, 19 id. 597; *Avery* v. *Groton*, 36 id. 304; *Camp* v. *Rogers*, 44 id. 291. The court committed error in not recommitting the report, with instructions to the committee to lay out a private way for the petitioner.

*Samuel A. Herman*, for the appellee (respondent).

To appropriate land by process of eminent domain, for a private way, it must be public in its character, and not for the exclusive use of the applicant. *Reynolds* v. *Reynolds*, 15 Conn. 83; 1 Beach on Public Corporations, § 668; Lewis on Eminent Domain, § 167. The necessity, utility and feasibility of the way prayed for is a question for the committee to decide. *Scutt* v. *Southbury*, 55 Conn. 405. If it is alleged in the petition that a certain person is the owner of the property desired, proof of title is dispensed with and the petitioner is estopped to dispute the title as alleged in the petition. *Ry. Co.* v. *Chicago Western Division*, 87 Ill. 322. The statutes under which the proceedings are brought, make it the duty of the petitioner to ascertain the owner of the land and make him a party to the proceedings. General Statutes, §§ 2706, 2713 and 2714. It is not the duty of a court or its committee to determine the title to real estate in condemnation proceedings. The committee find that said pond is surrounded by lands owned by Mrs. Phelps and is posted as a private fish pond by her. If she was in possession of the pond under a claim of title, she could recover under proceedings of this kind. *R. R. Co.* v. *Stroud*, 45 Ark. 280. The appellant knows that he can have a way to his land without calling out the selectmen, if he abandons the petition for the way across the pond. He has always had access thereto without restraint. The committee in determining common convenience and necessity, may consider the surrounding circumstances, location, surrounding property, and expense. *Spencer* v. *R. R. Co.*, 62 Conn. 242;

*Hartford* v. *Day*, 64 id. 250. The selectmen in laying out roads should exercise sound discretion as to the route. And their refusal to lay out the way prayed for is justified in the exercise of sound discretion. *Atwood* v. *Partree*, 56 Conn. 80. The fact that the petitioner must pay the damages, does not preclude the landowner from contesting the laying out of the way in the place prayed for, nor the selectmen from exercising their discretion. The plaintiff was not entitled to be heard upon the new matter set up in the remonstrance. *Scutt* v. *Southbury*, 55 Conn. 406.

TORRANCE, J. The plaintiff applied to the selectmen of the town of Colebrook for the layout of a private way in said town over the land of one Horace M. Phelps, to the land of the plaintiff. The selectmen neglected to lay out said way, and the plaintiff then brought his application for said layout to the Superior Court. That court after due hearing appointed a committee to hear said application, and the committee after due notice and hearing made a report adverse to the plaintiff. To this report the plaintiff filed a remonstrance, which the court overruled. The court accepted the report and denied the plaintiff's application, and from that judgment the plaintiff took the present appeal.

Both the town and Horace M. Phelps were made parties defendant in the Superior Court, but Phelps died before the committee was appointed, and Julia E. Phelps, who appears to have succeeded Horace M. Phelps in the occupancy and ownership of the Phelps land, was afterwards duly made a party and appeared and was heard in the proceedings subsequent to the appointment of the committee.

In the application to the Superior Court the way prayed for was thus described : " Commencing in the center of said highway (previously described in the application) at a point 41 links south from the southwest corner of a large rock being near the entrance to the old boat landing, so-called, thence N. 77½° W. 230 links, thence S. 74° W. 100 links, to the current at the outlet of Baker pond, so-called, thence following the channel of said Baker pond to the inlet of said

pond, about 86 rods, thence following up the inlet of said pond to the said land of said petitioner ; said private way being three rods in width."

The application alleged that the plaintiff's land was bounded on all sides by lands of Horace M. Phelps ; that it was not contiguous to any public highway ; that there was no means of access to it except by crossing the Phelps land ; that plaintiff had been unable to obtain a right of way over the land of Phelps by purchase or otherwise ; that the right of way prayed for was a necessary and convenient one, and that the selectmen had at all times refused to lay it out. The Superior Court found that the selectmen had neglected and refused to lay out the way prayed for, and thereupon appointed a committee " to hear and decide said application and report their doings to said court."

The committee in their report found the following facts : " The petitioner owns 30 acres of land in said town of Colebrook, bounded on all sides by lands formerly occupied, and owned or claimed to be owned, by Horace M. Phelps, deceased, and now occupied, and owned or claimed to be owned, by said Julia E. Phelps, and the plaintiff has no means of access to his said land except by crossing such surrounding lands of said Julia E. Phelps. The land of the plaintiff is situated west of the brook running into Baker pond, so-called, and is bounded on the east by the west bank of said brook, and the land on each side of said brook is swampy for several rods, and is impassable except in very dry weather or when the ground is frozen. Said Baker pond is surrounded by said lands of said Julia E. Phelps, and covers about 12 or 15 acres of land, and is posted as a private fish pond by said Julia E. Phelps, and is claimed to be of considerable value as such pond, and the value of the farm of Mrs. Phelps is largely dependent on the keeping of said pond under the control of the owner of the farm. If the prayer of the petitioner should be granted, and a right of way be laid out as asked for in the plaintiff's application, from a certain point on the outlet of said pond up said outlet, across said pond and up the inlet to the land of the peti-

tioner, the damage to the property of said Julia E. Phelps would largely exceed the value of the land of the plaintiff. The committee find that for all purposes for which the land of the plaintiff can be utilized, another way more desirable and of less damage to the property of Mrs. Phelps can be found. The committee find that the way prayed for is not of such convenience or necessity that it ought to be granted, and they therefore refuse to survey and lay out the same, and have therefore made no estimate of damages. The committee also find that the selectmen of the town of Colebrook ever have been and now are ready and willing to lay out a private way for the plaintiff, in a reasonable and convenient place to give the plaintiff access to his land."

The objections to the acceptance of the report, set up in the remonstrance, may be summarized as follows: (1.) The committee found all the substantial allegations of the complaint to be true, and yet refused to lay out the way prayed for. (2.) The finding "that the way prayed for is not of such convenience or necessity that it ought to be granted," is based upon the fact that such way will injuriously affect the right of Mrs. Phelps in Baker pond, and yet it is not found that she owns said pond, nor how her rights therein would be injuriously affected. (3.) It is not found whether Baker pond is a public or private pond. (4.) Baker pond is a public pond, used by the public from time immemorial for floating and hauling lumber, timber and wood, "and no exclusive rights therein are owned by said Julia E. Phelps." (5.) "It did not appear in evidence before said committee, and is not the fact," that the selectmen of Colebrook ever have been ready and willing to lay out a private way for the plaintiff in a reasonable and convenient place, "and it is not found as a fact that said town ever laid out such way or actually offered to lay out such way." (6.) Because the committee considered the damages to Mrs. Phelps as an element in determining the question of the necessity of the way prayed for. (7.) "Because it appears from the facts in detail, as reported by the committee, that a private way to the plaintiff's land was necessary, yet the committee do not

find whether or not it was necessary, but only find that in view of the damage to Julia E. Phelps, it 'is not of such convenience and necessity that it ought to be granted.' (8.) Because the committee do not find what part of the land adjacent to Baker pond is actually owned by said Julia E. Phelps." The ninth and last paragraph of the remonstrance prayed that the report be not accepted, but be recommitted to the committee to ascertain and report upon the matters which in the preceding paragraphs it was alleged the committee had not found. An amendment to the remonstrance set up certain other objections to the acceptance of the report, but as the reasons of appeal cover only the action of the court upon the remonstrance as originally filed, it becomes unnecessary to state or consider the matters alleged in the amendment.

The errors assigned upon this appeal are eleven in number. The third, fourth and tenth reasons, allege that the court erred in not recommitting the report to the committee to find certain facts which the remonstrance alleged had not been found; namely, whether Baker pond is a public or a private pond, whether or not the public had such rights in it as the remonstrance alleged, whether or not Mrs. Phelps had the exclusive right to said pond, and what part of the land adjacent to said pond was actually owned by Mrs. Phelps.

There is no foundation in fact for these assignments of error, for we are of opinion that the report does in effect find that this was a private pond, surrounded by the land of Mrs. Phelps, and that her rights therein were exclusive of the public.

But even if this were not so, the plaintiff had no right to be heard upon this part of his remonstrance, because these were new matters set up for the first time in the remonstrance. If they were relevant upon the question of convenience and necessity, the plaintiff had the opportunity to present them before the committee; and if they were not, they are wholly outside the case as it stood before the committee. *Scutt* v. *Town of Southbury*, 55 Conn. 405.

The fifth assignment is that the court erred in accepting the report, because the committee having found that the

selectmen were ready and willing to lay out a way for the plaintiff in a reasonably convenient place, had not also found the further fact, that they had ever laid out, or ever actually offered to lay out, such way.

Neither the fact found, nor the one not found, is material to the validity of the report; and the claim upon this point, on its face seems to be, that the report having found one immaterial fact, should be rejected because it has not found another. As shown by the brief, however, the real claim of the plaintiff upon this point is, that evidence of the readiness of the selectmen to lay out a way elsewhere was irrelevant, and so not admissible. It must be conceded that the evidence in question was irrelevant; but this being so the plaintiff should have objected to it and taken a ruling upon it, and if the ruling was against him, pressed that adverse ruling in his remonstrance and reasons of appeal. So far as appears he took no such course before the committee, and his appeal is, not because irrelevant evidence was received and an irrelevant fact was found from it, but because the committee failed to find a fact which is clearly irrelevant, and which the plaintiff himself claims to be irrelevant. The remonstrance upon this point was properly overruled.

The remaining assignments, with the exception of the first, may be considered together, because they all relate to the question whether the committee could rightfully consider, as elements in determining the question of the private necessity and convenience of the way as prayed for, the injury to the land of Mrs. Phelps, in connection with the further fact that a reasonably convenient way for the plaintiff could be laid out elsewhere over her land. We think the record fairly shows, as claimed by the plaintiff, that the committee did take the two elements aforesaid into account in reaching their final conclusion, and that their action in arriving at that conclusion was largely influenced thereby; and we are of opinion that they might rightfully take them into account.

The power to lay out private ways seems to have been first conferred upon towns in 1773; Statutes of Conn. Ed. 1808,

p. 378; and the method of laying them out as then provided, remains to-day substantially the same. This statute has been held to provide not only for the layout of such private ways as might be for the common use of the inhabitants of a town, but also such as might be for the sole use of the applicant. *Reynolds* v. *Reynolds*, 15 Conn. 83, 97. In the syllabus of that case it is made a *quære* " whether it is within the constitutional power of the legislature to authorize the laying out of a way for the sole use of a particular individual over the land of another;" but as the point was not raised in that case it was neither considered nor decided; and for the same reason we have no occasion either to consider or decide that question now.

The power to take the property of A, *in invitum*, and transfer it to B, solely for the private benefit of B, even if we assume it to be a constitutional exercise of power, and that full compensation is to be made, is certainly a most extraordinary one. If such a power exists at all, its exercise should be strictly guarded and limited to the attainment of the object contemplated in conferring it. A statute conferring a power in its operation so highly derogatory to the rights of private property, should receive a strict construction, and such rights should be no further invaded than is necessary to effect the object of the statute, with as little injury to the rights of others as possible. The present proceeding is brought under the provisions of § 2722 of the General Statutes. The principal object of the statutes relating to the layout of private ways, is to give to the applicant a reasonably convenient way somewhere to and from his land, and when this is done the object of the statute is accomplished. It is immaterial whether that way is provided over route *A* or route *B*, if the one is about as reasonably convenient for the applicant as the other. And if, in the above case, the way laid out over route *A* will greatly injure and inconvenience the person over whose land it runs, and if laid out over route *B* will injure and inconvenience him very much less, he ought to have the right to show those facts, and no good reason has been shown why the committee should not take them into account. If

*A* brings his application for a private way through the garden or orchard or lawn of *B*, and alleges that the way as prayed for is the only reasonably convenient way for him, we think *B* should be permitted to show if he can, that a way equally convenient for *A*, and much less injurious to *B*, than the one prayed for, can .be laid out elsewhere. In such a case the rights of *B* and the injury and inconvenience to him should be considered. as well as the rights and convenience of *A*. It is of no consequence that *B* is to receive full compensation for the property taken; he may not want to part with his property at any price, and he should not be compelled to part with it for the private use of another, unless the object of the statute cannot be otherwise accomplished.

In the case at bar what the plaintiff was entitled to under the statute, if to anything, was a reasonably convenient way somewhere, over the Phelps land, to his own land. In his application he describes one route across the land, over which route he asks to have his way laid out; and he says in effect that no other way will reasonably serve his purpose. Mrs. Phelps denied this before the committee, and one of the issues before the committee was whether the way as prayed for was the only reasonable way for the plaintiff over the Phelps land; that is, was the way as prayed for, of such private necessity and convenience to the plaintiff that it ought to be laid out. Upon this issue the facts objected to by the plaintiff in his remonstrance were relevant, and might be proved before, and considered by, the committee.

In one of the assignments (the 9th) now under consideration, the plaintiff says the committee have not found that the way as prayed for was necessary or not necessary, "but only the relative fact or opinion that in view of the damages to Julia E. Phelps it is not of such convenience and necessity that it ought to be granted." The conclusion of the committee here alluded to, is not reached, as above intimated, solely "in view of the damages to Julia E. Phelps," but so far as appears, in view of all the facts in the case; and that conclusion, in a case of this kind, for aught that appears upon the record, was a proper conclusion; and is in effect a finding

that the way as prayed for was not of private convenience and necessity within the meaning of the statute.

What has been already said disposes of all the assignments except the first, which in substance is this: The committee finds that the plaintiff has no means of access to his land except by crossing the Phelps land, and yet they refuse to lay out the way as prayed for, or any other convenient way. In his brief upon this point the plaintiff, in substance says that the committee in the case at bar having found that a way somewhere over the Phelps land was necessary, were bound either to lay out the one prayed for, or provide one over some other route.

That the committee were not necessarily bound in this case to lay out the way as prayed for, follows from what has been already said. Were the committee then, having refused to lay out the way as prayed for, bound to lay out a way over some other route? We are of opinion that they were not. The method of procedure for laying out private ways is substantially the same as that for laying out public highways, as may be seen by a reference to title 44 of the General Statutes. It is a statutory procedure, and the rules which have been established by the decisions of this court in proceedings to lay out public highways, must govern to a large extent in proceedings to lay out a private way. In proceedings to lay out a public highway it is necessary to describe, in the application, the highway prayed for, with reasonable certainty. *Pierce* v. *Town of Southbury*, 29 Conn. 490, 495; *Clark* v. *Town of Middlebury*, 47 id. 331; *Town of Windham, etc.*, v. *Litchfield*, 22 id. 226. This is necessary for the convenience and protection of all concerned. The committee thus have upon the record a definite route, upon the convenience and necessity of which route alone they are to pass; the inquiry before the committee is thus properly limited so that each party interested may know just what he has to meet; and the finding of the committee can thus be pleaded in bar. *Webb* v. *Town of Rocky Hill*, 21 Conn. 468; *Terry* v. *Waterbury*, 35 id. 526. It is further settled in such cases that the committee, if they lay out any road at all, must lay out the road prayed for or some part of

it, without substantial deviation from the route prayed for. *Clark* v. *Town of Middlebury*, *Pierce* v. *Town of Southbury*, and *Windham*, v. *Litchfield*, *supra*. These decisions must govern in the present case. The plaintiff, as was his right, described in his application the precise way that he wanted. The question before the committee was whether that described way was of private convenience and necessity to him under the statute. That was the precise way he had asked the selectmen to lay out and which they refused to lay out. Under the statute the committee could lay out no way substantially different from the one described in the application. For these reasons we are of opinion that the court below committed no error in overruling the remonstrance.

In the case at bar it is apparent that the way prayed for was substantially a way over the waters of a pond—a water way. Whether a private way over water, like the present one, can be laid out at all under the statute, may well admit of doubt. The statute in speaking of public highways and private ways, seems to contemplate solid ways that can be worked and repaired, over which men and animals may pass on foot, and whereon wheeled vehicles may be drawn, and whose limits are defined by permanent solid objects and not an air drawn line; it contemplates a road or path as distinguished from a ferry or right of ferriage. In *Imlay* v. *Union Branch Railroad*, 26 Conn. 249, 256, this court said: " The term public highway, as employed in such of our statutes as convey the right of eminent domain, has certainly a limited import. Although, as suggested at the bar, a navigable river or canal is, in some sense, a public highway, yet an easement assumed under the name of a highway would not enable the public to convert a street into a canal. The highway, in the true meaning of the word, would be destroyed." But as the question thus suggested is not raised in the present case, and as its decision is not necessary to the disposition of the case, we pass it without deciding it, thus leaving it an open question.

There is no error.

In this opinion the other judges concurred.